SCHOOL COMMITTEE OF HOLYOKE *vs.* LARRY DUPREY & others.[1]

Hampden.    March 16, 1979. — July 10, 1979.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Practice, Civil,* Service of process, Failure to prosecute. *Arbitration. School and School Committee. Municipal Corporations,* Group insurance, Collective bargaining. *Contract,* Collective bargaining contract.

Where a school committee timely filed its application to vacate an arbitrator's award under G. L. c. 150C, § 11(*b*), but did not serve the defendants pursuant to Mass.R.Civ.P. 4 until seven months later, it was within the discretion of the judge to deny the defendants'

---

[1] Duprey, Theodore Williamson, Mary Griffin, and Bernard Healy were named as defendants individually and as representatives of the membership of the Holyoke Teachers' Association, an unincorporated association.

motion to dismiss the application under Mass.R.Civ.P. 12(b)(4) and (5) and Mass.R.Civ.P. 41(b)(2). [62]

An arbitrator exceeded his authority in ordering a school committee to pay 65% of the teachers' health insurance premiums, as required by a collective bargaining agreement, since the city had never accepted the provisions of G. L. c. 32B, § 7A. [62-64]

CIVIL ACTION commenced in the Superior Court on September 28, 1976.

A motion to dismiss was heard by *Cross, J.,* and the case was heard by *Greaney, J.,* on a motion for summary judgment.

*Theodore C. Brown* for the defendants.

*Kathleen G. Fallon,* for the plaintiff, submitted a brief.

PERRETTA, J. In May of 1974, the plaintiff school committee of Holyoke (school committee), and the defendants, the members of the Holyoke Teachers' Association (teachers), entered into a contract concerning the employment of teachers in the city of Holyoke. The contract was the result of collective bargaining and was in effect from January 1, 1974, through June 30, 1976. It provided, inter alia, that the school committee would contribute sixty-five percent of the teachers' health insurance premiums. In late June of 1975 the mayor of Holyoke notified the city treasurer to reduce the contributions to fifty percent, because the city had never accepted the provisions of G. L. c. 32B, § 7A. The mayor also notified the school superintendent, and, as of July 1, 1975, the contributions were reduced to fifty percent. As a result of this reduction the teachers commenced grievance proceedings pursuant to the collective bargaining agreement, and after a hearing the arbitrator found in the teachers' favor, ordering that the school committee reimburse the teachers the fifteen percent additional contribution they had bargained for but not received from July 1, 1975, through June 30, 1976.[2] The school committee commenced this

---

[2] The city had still not accepted G. L. c. 32B, § 7A, as of the expiration date of the contract, June 30, 1976.

action under G. L. c. 150C, § 11(*a*)(3), seeking to vacate the arbitrator's award, and the teachers counterclaimed seeking to affirm it. Because the judge found that the arbitrator had exceeded his powers by ordering the school committee to perform an illegal act, he entered judgment for the school committee. We affirm the judgment.

We dispose of a procedural issue raised by the teachers before reaching the merits of the matter. The school committee timely filed its application to vacate the arbitrator's award, G. L. c. 150C, § 11(*b*), but it did not serve the teachers pursuant to Mass.R.Civ.P. 4, as amended, 369 Mass. 997 (1976), until almost seven months later. Because of the delay in service the teachers moved to dismiss the application under Mass.R.Civ.P. 12(b)(4) and (5), 365 Mass. 755 (1974) (insufficiency of process and insufficiency of service of process), and Mass.R.Civ.P. 41(b)(2), 365 Mass. 804 (1974) (failure to prosecute). The judge denied the motion; the teachers now argue that the application should have been dismissed as matter of law.

Although the comparable Federal rules, Fed.R.Civ.P. 4 and 41(b), are not identical in language, they obviously share the identical purpose and intent. Federal case law regarding dismissal due to a delay in service or a failure to prosecute provides pertinent instruction (see *Martin* v. *Hall*, 369 Mass. 882, 884 [1976]), and it establishes the principle that a dismissal under either rule 4 or rule 41(b) is a matter within the sound discretion of the judge. When there is a delay in service of the summons, a judge under rule 4 is to be guided by the circumstances of each case, absent a specific directory or mandatory rule. See e.g., Rule 28 of the United States District Court for the District of Maine (1977). Fed.R.Serv., Federal Local Court Rules (Callaghan & Co., 1979) (if process has not been served within three months of the commencement of the action, the clerk notifies the plaintiff that the action shall be dismissed if the defendants are not served within the next thirty days). The mere passage of time does not require a dismissal (*Ashland Oil & Ref. Co.* v. *Hooker Chem.*

*Corp.*, 51 F.R.D. 512, 513 [S.D. Ohio 1970]; see *Pepsi Cola Co.* v. *Dr. Pepper Co.*, 214 F. Supp. 377, 379 [W.D. Pa. 1963]); it must constitute prejudice to the defendants, afford the plaintiffs an unfair tactical advantage, or involve harassment of the defendants. *Ashland Oil, supra* at 514. *H. Alpers & Associates* v. *Omega Precision Hand Tools, Inc.*, 62 F.R.D. 408, 411 (E.D. Pa. 1974). See also *Caribbean Constr. Corp.* v. *Kennedy Van Saun Mfg. & Eng. Corp.*, 13 F.R.D. 124, 126-127 (S.D.N.Y. 1952). Delay brings into question the plaintiffs' good faith and due diligence,[3] which, in the absence of extreme delay, must be balanced against the prejudice caused to the defendant. See *Messenger* v. *United States*, 231 F.2d 328, 331 (2d Cir. 1956) (delay of four years); *Pepsi Cola Co., supra* at 379. The same principle applies when imposing sanctions for a failure to prosecute. It is expressly stated in Mass. R.Civ.P. 41(b)(2) that a dismissal may be granted by the court "in its discretion." While this language is not found in the cognate Federal rule 41(b), it nonetheless has been held that the imposition of that sanction is a discretionary matter with lesser sanctions available to the judge to insure the due disposition of the action and to protect against the possibility of the harassment of defendants. See *Zavala Santiago* v. *Gonzalez Rivera*, 553 F.2d 710, 712 (1st Cir. 1977). See also *Link* v. *Wabash R.R.*, 370 U.S. 626 (1962); *Asociacion de Empleados del Instituto de Cultura Puertorriquena* v. *Rodriguez Morales*, 538 F.2d 915, 917 (1st Cir. 1976); *Pease* v. *Peters*, 550 F.2d 698, 700 (1st Cir. 1977).

---

[3] Counsel for the school committee filed an affidavit in opposition to the teachers' motion in which he stated that when he filed the application he misunderstood advice received from the clerk's office and believed that notice to the teachers was sufficient and service by summons was not required. He contacted the teachers' attorney and advised him of the filing of the application. He also mailed him a copy of the application. There is nothing in the record to indicate that the teachers dispute the facts set forth in this affidavit.

There is nothing in our case law which compels a result different from that demonstrated by Federal precedent. To the contrary, where notice is statutorily required to be given within a specified time, and it has not been done, dismissals have been denied in the absence of prejudice to the defendants. See e.g., *Cohen* v. *Board of Registration in Pharmacy*, 347 Mass. 96, 99 (1964) (action under G. L. c. 30A, § 15, timely filed but untimely service); *Schulte* v. *Director of the Div. of Employment Security*, 369 Mass. 74, 83 (1975) (action under G. L. c. 151A, § 42, as amended through St. 1971, c. 957, § 3, timely filed but return day outside statutory time limit); *Pierce* v. *Board of Appeals of Carver*, 369 Mass. 804, 810 (1976) (action under G. L. c. 40A, § 21, as amended through St. 1973, c. 1114, § 4, timely filed but untimely service). There is no reason why there must be a dismissal as matter of law where the action has been timely commenced but there has been a delay in service of the summons. The motion to dismiss did not allege prejudice, and the judge found, after a hearing on the motion, that the teachers did not show any prejudice. He denied the motion as a matter of discretion, and on this record there was no error in that denial.

Turning now to the substantive issue of the appeal, we are faced with the question whether the arbitrator exceeded his powers when he awarded the teachers reimbursement in the amount equal to the difference between the sixty-five percent contribution called for by the agreement and the fifty percent premium payment actually made. Whether the arbitrator exceeded the scope of his powers is an issue always open for review (*Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 467 [1976]; *School Comm. of West Springfield* v. *Korbut*, 373 Mass. 788, 792 [1977]), but that review is confined to the award itself because, in the absence of fraud, the manner in which the arbitrator reached the decision is of no relevance. *Trustees of the Boston & Me. Corp.*, v. *Massachusetts Bay Transp. Authy.*, 363 Mass. 386, 390 (1973). *Korbut, supra* at 793.

General Laws c. 32B, § 7(*a*), as amended through St. 1965, c. 841, § 4, provides in pertinent part: "With respect to any period of insurance which is in effect for an . . . employee . . . there shall be withheld from each payment of salary, wages, [or] other compensation . . . fifty per cent of the premium . . . and the governmental unit shall contribute the remaining fifty per cent of . . . premium" for the insurance of the employee. Authority for a governmental unit to contribute *more* than fifty percent is granted only to counties, cities, towns, and districts which accept G. L. c. 32B, § 7A, in the manner specified in § 7A(*d*). *Broderick* v. *Mayor of Boston*, 375 Mass. 98, 98-99 (1978). *Watertown Firefighters Local 1347* v. *Watertown*, 376 Mass. 706, 708-709 (1978). Because Holyoke had never accepted § 7A, the mayor ordered the contributions reduced.[4]

There is no question that the sixty-five percent contribution was improper. The teachers argue that the payment of health insurance premiums is a legitimate item for inclusion in collective bargaining agreements, and they rely upon *Kerrigan* v. *Boston*, 361 Mass. 24, 28 (1972), and *Brooks* v. *School Comm. of Gloucester*, 5 Mass. App. Ct. 158, 160 (1977). However, there is nothing in either of those cases to suggest that a governmental unit agreeing to make premium payments can do so in violation of G. L. c. 32B.

General Laws c. 149, § 178I, as well as the agreement,[5] provides that in the event of a conflict between any applicable law and the agreement, the law shall control. General Laws c. 150E, § 7 (inserted by St. 1973, c. 1078, § 2), the successor to G. L. c. 149, § 178I, provides that, if

---

[4] The sixty-five percent contribution had been made since 1971, as it was also part of the prior collective bargaining agreement between the parties.

[5] The collective bargaining agreement states, "The arbitrator shall be without power or authority to make any award which requires the commission of an act prohibited by law."

there is a conflict between the agreement and certain statutes specified within § 7, "the terms of the collective bargaining agreement shall prevail." The statute presented here, c. 32B, § 7, is not so specified. Whichever collective bargaining statute is applicable (we need not make that determination), § 7 is controlling. Because it would be unlawful for the committee to pay the contribution, it would also be illegal for an arbitrator to order such payment. *School Comm. of Burlington* v. *Burlington Educators Assn.*, 7 Mass. App. Ct. 41, 47-48 (1979). Compare *Marlborough* v. *Cybulski, Ohnemus & Associates, Inc.*, 370 Mass. 157, 159-161 (1976).

The teachers argue that the award is one for money damages due to two violations of the agreement and is not an order to perform an illegal act. The two violations they cite are the reduction in the contribution percentage and the school committee's failure to attempt to secure acceptance of § 7A by the board of aldermen.

In regard to the first issue, money damages could not be awarded to the teachers on the basis of the school committee's action in reducing its contributions to the insurance premiums. The school committee could not legally contribute more than fifty percent, and the arbitrator could not order it to commit an illegal act. It would be anomalous to award damages to the teachers because the school committee would not violate the law. "[A]n arbitrator has no power to make an award which requires a municipality to pay funds for a purpose for which municipal funds may not be expended. . . . We do not suggest that no award could be made in these circumstances . . . . The problem here is that damages were awarded for a purpose for which public funds could not be expended." *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. at 467-468.

The second basis that the teachers cite for an award of money damages is the school committee's failure to abide by that phrase of the agreement which required it to "take such other action as may be necessary in order to

give full force and effect to the provisions of this contract." The arbitrator found that the record did not indicate that the school committee had made any effort to secure acceptance of § 7A. This is not a case at all comparable to *Mendes* v. *Taunton,* 366 Mass. 109 (1974), where the mayor was required to seek an appropriation in order to fund a collective bargaining agreement, an act described as "a ministerial one which involve[d] no exercise of a policy-making function." *Labor Relations Commn.* v. *Selectmen of Dracut,* 374 Mass. 619, 626 (1978). The issue here, whether to accept § 7A, is a matter of municipal policy which can only be effectuated by the city of Holyoke according to statutory procedures, and its acceptance would have an effect on all employees of that city and not just the teachers. *Broderick,* 375 Mass. at 99. *Watertown Firefighters,* 376 Mass. at 708-709. As held in *Watertown Firefighters, supra* at 715-716 such an issue is analogous to that presented in *School Comm. of Hanover* v. *Curry,* 3 Mass. App. Ct. 151, 157 (1975), *S.C.* 369 Mass. 683, 685 (1976), which held that a school committee could not bind itself, or delegate to an arbitrator the authority to bind it, on a matter of public policy which has been enunciated by statute. See *Susquehanna Valley Cent. Sch. Dist. at Conklin* v. *Susquehanna Valley Teachers' Assn.,* 37 N.Y. 2d 614, 616-617 (1975).[6] The public policy limitation upon contracts concerning governmental contributions to insurance premiums must prevail, and it cannot be frustrated by awarding the contributions but under a different label. "This case exemplifies a well understood principle—that mere characterization of a feature of a collective bargain or an arbitration award as

---

[6] This is not to say that a school committee or like body could not obligate itself in a collective bargaining agreement to use its best efforts to persuade the appropriate governing body to accept § 7A, provided that it were clear that no consequences would attach to the failure by a school committee or like body to achieve the desired result. The school committee can be an advocate for, but not the guarantor of, the adoption of a municipal policy.

'compensation,' or 'terms or conditions of employment' or some other subject conventionally or by law within the scope of either process, will not save the provision if in substance it defeats a declared legislative purpose." *Watertown Firefighters, supra* at 714.

Because the arbitrator could neither order the school committee to pay the contributions nor award damages which would have the effect of contravening the declared municipal policy of the city of Holyoke, he exceeded the scope of his powers, and his award was properly vacated.

*Judgment affirmed.*